UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| T & D KOHLLEPPEL FARMS, INC., | § | |
| AND TED KOHLLEPPEL, | § | |
|     Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:10-CV-368-FB (NSN) |
| BEXAR, MEDINA, ATASCOSA | § | |
| COUNTIES WATER CONTROL & | § | |
| IMPROVEMENT DISTRICT NO. ONE, | § | |
| ED BERGER, BRIAN SULLIVAN, | § | |
| WILL CARTER, TOMMY FEY, and | § | |
| RALPH KOHLLEPPEL, | § | |
|     Defendants. | § | |

## REPORT AND RECOMMENDATION

**TO:** Honorable Fred Biery
    Chief United States District Judge

   This report and recommendation considers the defendants' motion for summary judgment.[1] After considering the parties' arguments, summary-judgment evidence, and the applicable law, I recommend granting the motion for summary judgment on the federal claims and remanding the state-law claims.

   **Nature of the case.** Plaintiff Ted Kohlleppel is a farmer who owns a ninety percent interest in plaintiff T & D Kohlleppel Farms, Inc.[2] The plaintiffs have a lease to farm on the Fischer Farm, owned by Patricia Fischer.[3] Thirty-eight acres of the Fischer Farm is located within the territory served by defendant Bexar, Medina, Atascosa ("BMA") Water Control

---

[1] Docket entry #69.

[2] Ex. #17 to docket entry #69 at 1.

[3] *Id.*

District Number One, while thirty-two other acres of the Fischer Farm are outside BMA District One.[4]  For several years, the plaintiffs purchased water from BMA to irrigate farmland located within the BMA district.[5]  In 2008, BMA billed the plaintiffs over $25,000 for water that it believed the plaintiffs had used in four different years to irrigate farmland outside the BMA district.[6]  BMA informed the plaintiffs that it would not continue providing water until the past-due balance had been paid.[7]  The plaintiffs disputed that they had used BMA water to irrigate non-district farmland and disputed the amount billed.[8]  BMA referred the matter to the District Attorney's office,[9] which pursued criminal charges against Kohlleppel for theft of water.[10]  Kohlleppel was eventually tried and acquitted of these charges.[11]  He then sued BMA and various BMA employees and board members in state court.  The defendants removed the case to this court after the plaintiffs amended their complaint to add federal claims.  The defendants moved for summary judgment on all claims.

**Summary judgment standard**.  "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record

---

[4] *Id.*

[5] Ex. #6 to docket entry #84 at 2.

[6] *Id.* at 3.

[7] *Id.* at 4.

[8] *Id.* at 3.

[9] Ex. #16 to docket entry #69 at ¶ 21.

[10] Ex. #6 to docket entry #84 at 1.

[11] *Id.*

indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[12] Where, as here, a party moves for summary judgment on a claim for which the non-moving party bears the burden of proof at trial, the moving party need only demonstrate the absence of evidence to support the non-moving party's claim.[13] If the moving party meets this burden, the burden shifts to the non-moving party to show that there is a genuine issue of material fact requiring a trial.[14]

**Discussion.** The plaintiffs brought several claims against BMA under 42 U.S.C. § 1983.[15] Section 1983 provides a cause of action to any person who has had a federal right deprived by another person acting under color of state law.[16] The plaintiffs alleged that the defendants deprived them of the right to free speech guaranteed by the First Amendment and the right to substantive and procedural due process guaranteed by the Fourteenth Amendment.

*First Amendment.*

When a First Amendment retaliation claim is brought in response to a criminal prosecution, the plaintiffs must prove the following to prevail: "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the

---

[12] *Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011) (internal quotation marks omitted).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[14] *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

[15] *See* Appendix #2 to docket entry #1 at ¶¶ 78–80.

[16] 42 U.S.C. § 1983.

defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."[17] In addition, plaintiffs must "establish each of the common law malicious prosecution elements," including the absence of probable cause.[18] *Id.*

The elements of a malicious prosecution claim are as follows:

(1) the commencement of a criminal prosecution against the plaintiff;

(2) causation (initiation or procurement) of the action by the defendant;

(3) termination of the prosecution in the plaintiff's favor;

(4) the plaintiff's innocence;

(5) the absence of probable cause for the proceedings;

(6) malice in filing the charge; and

(7) damage to the plaintiff.[19]

The defendants challenged the plaintiffs' evidence on two of these elements: causation and probable cause.[20] Probable cause is defined under Texas law as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted."[21] In other words, this standard asks "whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and

---

[17] *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005) (internal quotation marks omitted).

[18] *Id.* at 367–68.

[19] *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997).

[20] *See* Docket entry #69 at 8–20.

[21] *Richey*, 952 S.W.2d at 517.

reasonably believed them to be before the criminal proceedings were instituted."[22]  There is a "presumption in malicious prosecution actions that the defendant acted reasonably and in good faith and had probable cause to initiate the proceedings."[23]  The plaintiff can rebut the presumption by "produc[ing] evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause."[24]

      Where the underlying facts are not in dispute, probable cause is a question of law.[25]  Here, the plaintiffs did not identify facts relevant to the issue of probable cause that are in dispute.[26]  Beginning with the presumption that the defendants had probable cause to believe that the plaintiffs were stealing water, the question is whether the plaintiffs produced evidence that probable cause was absent.  The plaintiffs devoted two sentences in their response to this issue, arguing that the prosecutor could not have had probable cause because the defendants had to pressure him to prosecute Kohlleppel.[27]  Even if this argument relied upon competent summary-judgment evidence, which it does not,[28] the argument focuses on the wrong actor.  In a malicious prosecution case, the inquiry into probable cause focuses on whether the defendant—here, the

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *See* Docket entry #81 at 35–36.

[27] *Id.* at 36.

[28] The plaintiffs rely upon a statement of the prosecutor—that the "people at BMA have been on my back to prosecute this case"—to prove the truth of the matter asserted therein, namely, that BMA was pressuring the prosecutor to prosecute Kohlleppel.  The statement is therefore inadmissible hearsay not subject to any exception.

complaining witnesses—reasonably believed that a crime had been committed. Therefore, what is relevant is whether the individual defendants believed that Kohlleppel had committed a crime, not whether the prosecutor believed it.[29] The plaintiffs have thus produced no evidence that the defendants lacked probable cause to believe that Kohlleppel had stolen water. Because the plaintiffs have not rebutted the presumption that the defendants had probable cause, they cannot succeed in their claim for retaliation under the First Amendment.

*Substantive Due Process*.

The plaintiffs argued that their substantive due process rights were violated by BMA when BMA refused to continue providing them with water.[30] The court evaluates claims that government conduct violated one's substantive due process rights under the rational basis test.[31] To prevail in such a challenge, a plaintiff must first establish that he "held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies," an issue which is determined with reference to state law.[32] Next, the court must inquire whether the abridgement of such an interest was rationally related to a legitimate governmental interest.[33] If it is at least debatable that a conceivable legitimate objective underlies the government action,

---

[29] *See, e.g.*, *Richey*, 952 S.W.2d at 518–520 (determining the issue of probable cause by inquiring whether the complaining witness—the grocery store that accused the plaintiff of shoplifting and contacted police—reasonably believed that a crime had been committed).

[30] *See* Docket entry #81 at 40.

[31] *Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000).

[32] *Id.* at 249–50.

[33] *Id.* at 250–51.

6

the court will uphold the action.[34]

It is not necessary to determine whether the plaintiffs had a constitutionally protected property right to continued receipt of water under Texas law, because BMA's refusal to continue providing water was rationally related to a legitimate governmental interest. The Water Code states that "[i]f a landowner fails or refuses to pay a water assessment when due, his water supply shall be cut off, and no water may be furnished to the land until all back assessments are fully paid."[35] The Code further states that BMA "may refuse water service to any person who refuses to pay the charges and assessments for water service."[36] The legitimate reason for this policy is plain: if someone has failed to pay the amount due for the water that he has used, continuing to provide him with water creates no incentive to motivate payment, and it is likely that the future deliveries of water also will not be paid for. Although the plaintiffs argue that BMA acted arbitrarily and capriciously (presumably in concluding that Kohlleppel had failed to pay the amount due), this allegation does not defeat the rational relationship between the policy and a legitimate government objective; all that is required is a *conceivable* legitimate objective.[37] Thus, summary judgment for the defendants on the substantive due process claim is appropriate.

*Procedural Due Process*.

The plaintiffs next argue that the defendants violated their rights to procedural due

---

[34] *Id.* at 251.

[35] Tex. Water Code Ann. § 51.311.

[36] *Id.* at § 51.321.

[37] *See Kaplan v. Clear Lake City Water Auth.*, 794 F.2d 1059, 1065 (5th Cir. 1986) (holding that, where the water authority's denial of service to plaintiff was based on legitimate reasons, it was "immaterial" that those reasons may have been pretextual).

process.[38] The defendants relied on section 11.041 of the Water Code, which outlines a procedure for disputing the denial of water.[39] Under this provision, one denied water can submit a written petition showing his entitlement to water, which will be investigated and scheduled for a hearing if it is determined that there are probable grounds for the complaint.[40] Section 13.381 of the code provides for judicial review of the decisions made on such petitions.[41] The defendants argued that the plaintiffs failed to invoke these procedures and that the plaintiffs did not show that the procedures were inadequate or deprived them of property rights.[42] The plaintiffs do not engage with these statutes in their response but rather mentioned moments that Kohlleppel was allegedly denied the opportunity to speak during BMA board meetings, without citing to any record evidence.[43]

    The defendants have shown an absence of evidence to support the plaintiffs' claim that their right to procedural due process was violated. Although the defendants did not cite to record evidence in making their argument, they met their burden by showing the absence of evidence to support the plaintiffs' claims.[44] The defendants demonstrated that Texas law mandates a procedure for disputing the denial of water and no evidence proves that procedure was

---

[38] *See* Appendix #2 to docket entry #1 at ¶ 80.

[39] Tex. Water Code Ann. § 11.041.

[40] *Id.*

[41] *Id.* at § 13.381.

[42] Docket entry #69 at ¶ 64.

[43] Docket entry #81 at 40.

[44] *Celotex*, 477 U.S. at 325.

inadequate. The burden then shifted to Kohlleppel to produce evidence to raise a fact question.[45] By avoiding the issue of whether Kohlleppel took advantage of the available procedures or whether the procedures were in fact made available to him as envisioned by the statute, the plaintiffs failed to show that there is an issue of fact requiring a trial on this claim. Therefore, summary judgment for the defendants is appropriate on this claim.

**Recommendation.** The defendants are entitled to summary judgment of the plaintiffs' federal claims. There is no need for the court to adjudicate the state-law claims. Thus, I recommend granting summary judgment in favor of the defendants on the federal claims. Because section 1367 of Title 28, United States Code, permits the court to decline to exercise supplemental jurisdiction over state-law claims if all federal claims have been resolved,[46] I recommend denying the defendants' motion as to the state-law claims, declining to exercise supplemental jurisdiction on the state-law claims, and remanding those claims to the state court.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[47]

---

[45] *Bayle*, 615 F.3d at 355.

[46] 28 U.S.C. §1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction").

[47] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

Such party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[48] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.

**SIGNED** on March 24, 2012.

*[signature: Nancy Stein Nowak]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[48] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).